Horace F. Nixon, the defendant in this cause, is a counselor-at-law of this state, having his office in Camden, New Jersey. He is also engaged as a mortgage broker and has been so engaged for thirty years.
The complainants, Albert L. Turnley and Eva M. Turnley, were his clients and he had invested and reinvested money on mortgage for them for a great many years, advising them with relation to the same.
On January 7th, 1927, Joseph Ceresini and wife executed to George C. Roach a mortgage for $2,300 payable in two years from that date, on premises in Mt. Ephraim, Camden county, New Jersey, which mortgage may be referred to as the "Ceresini Mortgage."
On the same day George C. Roach, the mortgagee, executed an assignment of this mortgage in blank which bears acknowledgment date January 12th, 1927. The bond and mortgage were then held by defendant and Caroline D. Nixon, his wife, trustees for Caroline D. Weeder (nee Nixon), Margery MacKenzie (nee Nixon) and Mary Scott (nee Nixon) under a trust created for their benefit, called the triple trust; and afterward on July 6th, 1927, by said trustees assigned to Horace F. Nixon, attorney (a corporation of the State of New Jersey); both of said assignments were made by parol and delivery, no written assignments having been made between the parties.
There was also executed on January 7th, 1927, a declaration of no offset by Joseph Ceresini and Anna Ceresini, his wife, which did not recite the assignment of mortgage to any specified assignee.
By deed dated February 24th, 1928, acknowledged the same day, and recorded March 1st, 1928, Joseph Ceresini and wife conveyed to Lida J. Calhoun, an employe of Horace F. Nixon, in consideration of one dollar and other valuable consideration, the premises covered by the Ceresini mortgage.
Calhoun held this property as trustee for the defendant's wife, Caroline D. Nixon, who had a mortgage second to the Ceresini mortgage. *Page 118 
On April 18th, 1929, the defendant wrote to the complainant Albert L. Turnley as follows:
"I have received a check for the principal and interest to date on your Laura Haines mortgage of $2,300. Please mail me all the papers held by you on this mortgage and let me know if I may take another mortgage for you, or if you wish the principal. I can give you another mortgage of the same amount on the adjoining property on Gloucester avenue, of the same value as this property, for $2,300.
Please let me know if this meets with your approval."
To which he received a reply from Albert L. Turnley, dated April 23d 1929, as follows:
"Your letter of the 18th received today in reference to the Laura Haines mortgage being paid off. I have written my daughter to get the papers from the bank as soon as she is able to do so for you then she will leave them at your office.
You may invest the $2,300 for me as you advise in your letter to me on property next door."
Following the receipt of this letter defendant caused the Ceresini mortgage to be assigned to complainants by filling in their names as assignees in the blank assignment dated January 7th, 1927.
On July 27th, 1929, defendant mailed to complainant Albert L. Turnley, the Ceresini bond and mortgage, assignment, declaration of no offset, searches and insurance policy, stating that these were all the papers to be held by him with his mortgage of $2,300 covering the Joseph Ceresini property. No new assignment of mortgage or declaration of no offset were executed.
Defendant, in reply to a letter written to him by the complainant Albert L. Turnley, with reference to unpaid interest, wrote Turnley on January 20th, 1931, stating "the Ceresini interest is behind and I cannot tell you just how soon it can be paid as I personally advanced the last interest due on this property and have not yet been repaid for this advance."
On May 29th, 1931, the defendant wrote to complainant Albert L. Turnley a letter containing a proposal, a copy of which letter and the assent of said complainant follows: *Page 119 
"May 29, 1931.
19-210 HFN/BR Mr. Albert L. Turnley, Stone Harbor, New Jersey.
Dear Mr Turnley:
I have had to take over the property covered by your Ceresini mortgage of $2,300 for the second mortgagee at an expense of $220.96. I will turn over a deed to this property to you or such person as you may designate, for this actual expense, and cancel Mrs. Nixon's second mortgage of $1,005.50. The property is rented at $28 a month, so this is more than sufficient to amply carry it. I will have the rents sent directly to you, and will put the property on my sale list and sell it as soon as possible, with the understanding that if I can get sufficient to cover the principal, interest of your first mortgage, taxes and other expenses which you may incur, less the rentals, that I am to have the balance on account of Mrs. Nixon's claim.
The taxes are paid through the first half of 1930, and the above sum of $220.96 includes the cost of the renewal and the fire insurance policy. There is sidewalk, curb and gutter assessment of $88.48 on which four installments have been paid, and a sewer assessment of $191.15 upon which one installment has been paid.
Unless you direct me to the contrary, I will have a non-merger deed made to you and your wife.
 Yours very truly, HORACE F. NIXON.
 I agree to the above. ALBERT L. TURNLEY."
This letter gives the impression that the taking over of the property by Nixon was a comparatively recent occurrence, whereas it had taken place about three years before.
On the same day another letter was written to Mr. Turnley which was also delivered to him, a copy of which follows:
"May 29, 1931.
HFN/BR Mr. Albert Turnley Stone Harber, N.J.
My dear Mr. Turnley:
Confirming our consultation of this morning, I have received in the Dandrea matter with reference to your mortgage on premises 1667 Norris Street, Camden, the sum of $320. I paid for repairs $13.22, and my commission amounts to $30. I charged against this amount also, the fire insurance premium of $14.09 on the Ceresini property, and the deficiency of $207.89 on the Ceresini property in accordance with my letter of even date. *Page 120 
Enclosed I send you two checks for the balance due you, one for $28.50 on the Company account, and one for $21.30 on the trustee account to balance our accounts as of today.
Yours very truly, HORACE F. NIXON.
Total rents received ................................... $120.00
Received of Costanza Bros. ............................. 200.00
 _______ $320.00
Insurance Prem. due 11-1-30 ............................ $3.72
H.S. Ayars, papering kitchen ........................... 6.50
Wm. T. Layer, keys, etc. ............................... 3.00
Horace F. Nixon, fee ................................... 36.00
Ceresini insurance premium ............................. 14.09
Ceresini deficit ....................................... 207.89
Checks herewith totaling ............................... 49.80
 _______ $320.00"

Thereafter, on June 3d 1931, a deed was executed by Lida J. Calhoun to the complainants, covering the premises in the Ceresini mortgage, which deed was recorded June 5th, 1931. This deed was subsequently sent to Mr. Turnley.
On August 5th, 1931, the complainant Albert L. Turnley wrote the defendant as follows:
 "Stone Harbor, N.J. Aug. 5, 1931.
First Mortgage Service Co. Mr. H.F. Nixon, Pres.
My dear Mr. Nixon:
Since I talked to you the day I was at your office and you pushed two properties off on me on returning to my home I have been studying over the matter and have come to this conclusion —
When I went to the tax collector at Mt. Ephraim I found the Gloucester ave. property that you represented to me as belonging to Cerecini assessed to Lida J. Calhoun and on further investigation at the Court House I find that she held title to this property before and at the time you gave me this mortgage. Therefore the loan was not such that you could conscientiously recommend to me or client where you acted in a trust or confidence capacity. Remember you gave me this mortgage as well as the De Andrea (Pal Plas) $3100 mortgage while I was away or in Florida and I never saw either of the properties until after I was given title.
I suppose I must take my medicine on the D'eandrea Norris st. property even though I have had to pay a lot of back taxes and water rents which you should not have neglected and in that way put me to a great expense besides foreclosure costs. As for the *Page 121 
Gloucester ave. Mt. Ephraim property I shall expect you to take that off my hands and pay me the full Principal, interest to settling date costs that you soaked me for this same money was due me months back but you just retained it to square yourself then had the nerve to roast me 15% on the retaining money on the Deandrea property. This amount you used to cancel your 2nd mortgage.
I have today told Mr. Nutter I demand you take both these mortgages off my hands. He has asked me to wait untill you return from Europe before taking any action which I have agreed to do. I ask that this letter will be forwared to you so that you can be ready to render me a square deal on your return.
I do not want you to think that I am angry or unjust in this matter because it is only justice and right business and I ask 
demand that you take the two mentioned properties off my hands on your return. I cannot and am not going to pay the Gloucester ave. at Mt. Ephraim taxes.
I shall await your reply on your return at the office.
 Yours very truly, ALBERT L. TURNLEY."
This letter was acknowledged by Mr. Nutter, an employe of Mr. Nixon, in which letter he stated that a copy of Turnley's letter was being forwarded to the defendant in Europe and the matter would be taken up with him on his return which would be about September 20th, 1931.
Mr. Turnley saw the defendant at his office upon his return from Europe in September, 1931, in an effort to have him take back the Ceresini mortgage and deed for the property and pay to the complainants the amount due them for principal and interest on the Ceresini mortgage, but without avail.
On November 2d 1931, complainants filed their bill in this cause alleging that the transaction involving the transfer and assignment of the Ceresini mortgage and the conveyance of the premises to them was fraudulent and seeking to require the defendant to repay complainants the amount of the Ceresini mortgage, with interest.
The complainants were clients of the defendant; defendant was either acting in the capacity of their attorney or as their agent and was placed under a duty to disclose fully all the facts and circumstances in connection with these transactions.
The correspondence in this case conducted by the defendant with the complainant Albert L. Turnley was on defendant's letterheads as counselor-at-law up until after the settlement *Page 122 
of May 29th, 1931. One or two letters after that date were on the letterheads of the First Mortgage Service Corporation of which Mr. Nixon was president.
In their brief, counsel for defendant admit constructive fraud. The failure of the defendant to disclose fully the facts and circumstances surrounding his transaction in connection with this mortgage was fraudulent and so far as the legal effect is concerned in this case it is immaterial whether it was actual or constructive fraud.
Testimony was submitted relating to the value of the mortgaged premises, ostensibly for the purpose of enabling the court to determine whether the complainants had suffered a loss as a consequence of this fraud. I do not feel obliged to make a finding on that point since I do not regard the question as a controlling element in this case.
The defendant endeavors to relieve himself of his responsibility to complainants by the contention that the complainants are in laches and further that the transaction was ratified by them. The defendant endeavors to show by various exhibits offered in evidence, particularly insurance policies and endorsements thereon, that the complainants had means of becoming acquainted with the facts surrounding this mortgage transaction or could have reasonably obtained such knowledge before taking over the deed for the premises in May, 1931, although it is obvious that he made no effort to directly inform the complainants of the circumstances. At the time this mortgage was taken by the complainants it was not only in default so far as the mortgagors, Joseph and Anna Ceresini, were concerned, but they had actually conveyed the premises to Lida J. Calhoun, the defendant's employe, who held the same at that time in trust for Mrs. Nixon, the second mortgagee. It is reasonable to suppose that complainants would expect the defendant to invest their money in a mortgage which had not been so defaulted upon, and it was very important that they should have been fully informed of all the matters surrounding this investment so that they could have formed their own judgment as to the desirability of the mortgage under such circumstances. They, however, trusted Mr. Nixon and he failed to disclose these facts, and *Page 123 
it was not until sometime after the receipt of the deed from Calhoun to Turnley in the summer of 1931 that Mr. Turnley discovered, by his own independent investigation, that at the time he took this mortgage the title to the property was actually vested in Calhoun, an employe of the defendant.
From the testimony, notwithstanding the endeavor on the part of the defendant to show that the complainants were fully informed at the time of the settlement in May, 1931, I must find that they did not have knowledge of either the facts or their rights in the matter, and the settlement made at that time was without this full knowledge and without independent advice.
I have read the correspondence conducted by Mr. Nixon with Mr. Turnley, some of which I have quoted. I might also refer to a letter under date of December 2d 1929, in which Mr. Nixon enclosed a title policy and stated in this letter that it was to be held by Turnley with his mortgage of $2,300, "covering property of Joseph Ceresini." And in the other letters, the property is referred to as the "Ceresini property," and in no case, so far as I recall, prior to the settlement of May 29th, 1931, does the defendant refer to this property as being the property of his wife held for her by Calhoun, the grantee in the deed at that time. In defendant's letter of May 29th, 1931, he says: "I have had to take over the property covered by your Ceresini mortgage." This was over three years after the deed made by Ceresini to Calhoun and was almost a studied effort to conceal that fact.
At the time of this settlement, the defendant endeavors to prove by a ledger sheet which was shown to Mr. Turnley, that the property was in the name of Calhoun. Examination of this ledger sheet shows at the top after the printed word "name" the word "Ceresini," and in lead pencil after the printed words "credit limit," "deed, Lida J. Calhoun." Mr. Turnley denies that he discovered from inspecting this ledger sheet that the property was then in Calhoun's name.
Mr. Turnley testified that he did not know when the conveyance was made to Calhoun until after the settlement in May, 1931, and I believe that to be the case. *Page 124 
It must be borne in mind that Mr. Turnley had at the time of this transaction complete confidence in Mr. Nixon, had no good reason to examine closely the papers sent to him, and could hardly be expected to ascertain from an examination of the various endorsements on insurance policies and other papers the information to which he was entitled, unless his attention was especially directed to them for that purpose. Admittedly some of these endorsements were wrong. I note one endorsement of a mortgagee clause under date of June 6th, 1929, showing "the interest of Horace F. Nixon, first and Caroline Nixon, second mortgagee, having ceased," yet the defendant, Horace F. Nixon, was never shown to be the holder of the first mortgage, so that as a means of bringing to the complainants the knowledge which they should have had, these endorsements and ledger sheets must fail.
I must conclude from the testimony that the complainants never ratified this transaction with knowledge of the circumstances attending it. It is well settled that no act will be held as an act of confirmation by a court of equity unless it was done with a knowledge of the legal and equitable rights of the parties whose rights are sought to be concluded by such act. Mulford v.Minch, 11 N.J. Eq. 16.
As to the defense of laches, it would not seem that there had been any unreasonable delay on the part of the complainants in filing their bill after becoming acquainted with the facts and circumstances bringing to their knowledge the fraud practiced upon them by the defendant.
Having concluded that this knowledge came to the complainants in the summer of 1931 during the absence of the defendant in Europe, and complainants having written to him, awaiting his return from Europe sometime in September in an endeavor to effect an adjustment, and having filed their bill in November after a failure to reach an adjustment, I conclude that there has been no laches attributable to the complainants.
A party who is entitled to set a transaction aside cannot be charged with delay or with acquiescence or with confirmation unless there has been knowledge of all the facts and perfect freedom of action. Acts which might appear to be acts *Page 125 
of acquiescence will not be held to be such if the client is ignorant of the circumstances. Where bills are filed to set aside contracts or deeds between parties standing in a confidential relation to each other, the defense of laches is not usually regarded with favor. It has been said that "length of time weighs less in such a case than in any other" and that it is "extremely difficult for a confidential agent to set up an available defense grounded on laches of his employer." Elmore v. Johnson,143 Ill. 513; 32 N.E. Rep. 413; citing and quoting Wood v.Downes, 18 Ves. Jr. 120.
The complainants are entitled to a decree under the facts in this case.
The decree will require defendant to repay to complainants the principal of this mortgage of $2,300 with interest from July 7th, 1930, together with such moneys applying to this transaction as were deducted from moneys in the hands of the defendant belonging to the complainants at the time of the settlement on May 29th, 1931; and for any moneys expended by way of taxes and other expenses in connection with the property since its conveyance to the complainants, less the amount of rents collected by the complainants on this property. I think this amount can be ascertained from the testimony and is a subject of mere calculation.
The assignment of mortgage to complainants and the deed from Calhoun to complainants can be declared null and void, or upon the payment of the moneys so found to be due the complainants, together with counsel fees and costs, the bond and mortgage can be reassigned to defendant or his nominee and a deed executed from complainants to the defendant or his nominee for said premises.
It is unnecessary in order to afford relief to the complainants against the defendant, to bring in as parties any of the others; Lida J. Calhoun was merely holding the premises in trust for Caroline D. Nixon, wife of the defendant, and both parted with any interest which they may have had, and no effort is being made to charge either with responsibility of making repayment to the complainants.
I will advise a decree in accordance with these conclusions. *Page 126